Review argument next in number 2008-3064 Mitchell v. MSPB Good afternoon, your honor. May it please the court. The administrative judge's decision in this case was to find that there was no jurisdiction without holding a hearing. We believe that was wrong and that decision ought to be reversed. The board takes the position that, in footnote 2, that we've incorrectly assessed what the standard is in order for a complainant to merit a hearing with respect to jurisdiction by alleging where we've alleged that there were non-frivolous allegations of fact. The board's position refers to two cases, one involving the Whistleblower Protection Act, the second involving USERRA. However, when you go through and look at the other decisions from this court, it's clear that the non-frivolous allegations deal with many cases involving postal workers. It's not limited to the WPA or USERRA. We've met MSPB cases before and after Garcia. But let me take you back to the question of jurisdiction here involves the question of whether or not he had served one year of continuous employment before the adverse action was taken. Our position on this is that he's made non-frivolous allegations of fact that should have given rise to a hearing, at which point he would have been in a position to have demonstrated that, in fact, he was a supervisor from the time he was appointed on May 9th, 1998, until the time that he learned of the letter of decision in December of 2006. What would have been heard at a hearing other than the question of whether he, in fact, got notice of the action that was taken with regard to him? What else was there to determine at the hearing? It would seem to me that if you accept that he didn't get notice and you still conclude that the legal effect of the decision was to terminate his employment, although it might not have terminated his right to appeal and other rights, but if it did terminate his employment, isn't that all you need to know? I think it goes beyond that. Okay. What beyond the question of whether he did or didn't get notice would you need to have developed at a hearing? Well, that's mainly it as to whether or not he got notice. That's really it, isn't it? Well, what beyond that? No. Okay. That's correct. I assume you would have won on the proposition that he didn't get notice and he still loses. Then the hearing is sort of pointless, right? I don't understand how he loses. Well, I know because I disagree with the proposition that the other side is making as a legal argument. Their legal argument is he was out of the job at the time that the decision was made without regard to whether he actually got notice of that decision. You don't agree with that, but if that's right, there's no need for a hearing, right? I don't think that that's in conformity with what the regulation requires. Well, I understand you disagree with that, the legal position that's being taken, but if you're wrong on that, no hearing, correct? No need for a hearing. If the conclusion is that he was, he had effectively been notified. No, not that he'd been notified. The proposition, as I understand it, that's the basis for the argument made against you is that whatever rights he may have had, for example, to appeal based on a tardy notification, assuming that he wasn't notified on a timely basis. But one thing he doesn't get is he was out of the job at the time of the decision and he doesn't get to be treated as if he continued in the job for purposes of his tenure in the position at any time, regardless of whether he was notified, after the date of the decision. I'm just having a problem with this out of the job concept. He was placed on emergency placement as a result of the fact that he was arrested and charged with a crime for which imprisonment was possible. Right. He receives notice of an indefinite suspension. He's not permitted to go back into the building at all. Right. His lawyer responds to that. Nothing happens after that from our point of view. The legal effect of that is, under the regulation as well as under this Court's decision in the Louis case, that the failure to provide him with the notice of the decision makes that the action taken by the agency a nullity. Well, that's not – I don't think that's an accurate reading of the Louis case. The Louis case is a question of whether the effective date is told somehow. Well. But that's a separate question from whether he remained in a supervisory position after the date in which he was placed on indefinite suspension. But that's the issue that – I think the logic of Louis is consistent with the explanation that I provided to say that the regulation says the agency shall deliver notice of the decision to the employee at or before the time the action will be effective and advise the employee of appeal rights. This court in Louis then says, any stated effective date in a written notice that is prior to the date of delivery of the notice conflicts with the regulation and is consequently a nullity. That's certainly the case with respect to the timeliness of his appeal rights. But the point beyond that, which I had argued in the brief, was that there's some real question as to whether the agency ever undertook to make the decision that placed him on indefinite suspension. If, for example, the letter of decision is signed by someone other than whose name is printed under it. So you can foresee the possibility that the letter of decision is prepared. It goes to the official. The official signs off on it. And it sits in a file. And it never goes out. There's nothing else that was sent out contemporaneously that ever indicated that was consistent with we are now implementing the indefinite suspension. So your position is, in the absence of his having, either way, if he didn't receive the notice, then that action is a nullity. That's correct. Well, he didn't go to work from 99 to 2006. Why, if he was on emergency leave, and that action, the indefinite suspension, would have put him on indefinite suspension. If we wipe the indefinite suspension out for the reasons you argue, we're still left with him being then on emergency leave for the next seven years. And so he's still, the whole place you're trying to get is to get him more than one year of continuous employment. It seems to me that notwithstanding the nullity or not of the indefinite suspension, if he wasn't indefinitely suspended, he was on emergency leave for seven years. Either way you cut it, he didn't work for more than one year of continuous service. If they would have provided him with some kind of notice and opportunity to appeal that within the year period, he wouldn't have had an opportunity to go to MSPB. His ability to appeal that would have put him into the agency. Well, let's assume hypothetically he's on emergency leave and they never take him off. He never went to work. I mean, he never, you know, he didn't come into the office from 99 to 2006. He said, where's my dad? Where's my paycheck? They prevented him from coming into, you know, they put him on emergency leave. He was on emergency leave. And they said, you know, you can't come back to work. Okay, and so he was on emergency leave. So he was clearly, now you're saying they weren't entitled, they weren't allowed to put him on emergency leave for seven years? Right. Well, there's no basis for him, where would he appeal that? He would have been able to appeal that had he, had that been the only action that was taken and he got some notice of that, he would have been able to appeal that to the Postal Service under their Section 652 procedures. But he was never notified that. Instead, they send him a notice that says, look, this indefinite suspension. No, you say he didn't receive the notice of indefinite suspension. He received the notice of emergency leave. He didn't show up at work for seven years. Was he AWOL? I mean, what was he thinking? No, he was in leave without pay status. They said, you know, you're stuck until we make the determination as to. So he knew he was on emergency leave. And therefore, did he appeal to the Postal Service saying that you violated the regulations a year later? I don't know what the regulations say in the Postal Service. So he had a right to appeal. He was unhappy that he didn't think they had a right to keep him on emergency leave that long. Well, he's presumably forfeited that right now. They never provided him with any kind of notices to what his rights were with respect to the emergency placement. So how did he know not to come back to work? Because he was told you can't come back to work and that was it. He responded through his lawyer. He responded to the emergency placement, to the notice of indefinite suspension, and nothing changed. He checked periodically with his lawyer. The lawyer says, I never received anything. Perhaps that's part of what we need to determine at the hearing as to what his recourse was at the time. Is it your position that your client is appealing an indefinite suspension that did not occur before December of 2006? Yes. Well, the Postal Service canceled his indefinite suspension on November of 2006. That's correct. So that means he's appealing a suspension that doesn't exist as of December of 2006. That's correct. He's got nothing to appeal. Well, but that's the due process violation. How can he be placed in this literally suspended iteration for an eight-year period without having any ability to go ahead and appeal anything, not only internally but also to receive no notice that he has a right to appeal anything to Merit System Protection Board with a specific regulation that says, you know, you're entitled to these appeal rights and a court decision that basically says, during that period of time, there should be no adverse action taken against you until such point as you receive notice of what the adverse action is going to be. All right. So you're really not appealing an indefinite suspension as of December 2006. You're appealing the indefinite suspension going all the way back to 1999. Well, it was a nullity as of December of 2006 because he was back on the job. They rescinded it after he was acquitted from the crime for which he was- You can't have it both ways. Either you're appealing some action that took place in 99 or you're not. Well, I would appeal it. The only notice that he got which generated all of this was the decision when he became aware of the fact that he received the January 1999 notice of indefinite suspension. Now, had that been received in due course, had it been sent, received by either him or his lawyer or both- No, there's no- I see. If it had- Oh, okay. If it had, then he wouldn't have been able to take an appeal, correct? If he would have received it within a year from the time he was appointed supervisor, that would be correct. So he's saying he's in better position by virtue of not having received the notice than he would be if he had received it. I don't know that being out of work for eight years has placed him in a better position at all and it wasn't something that- Vis-à-vis the question of whether he has- However, if he would have received it during the year period of time, he did have an available appeal to the Postal Service's internal procedures then. They denied him of that fact in December of- or in November of- December of 2006. And so he's left without any type of recourse anywhere as a result. Your client in the appendix at page 47 seems to admit that he was indefinitely suspended in January 1999. I think it was poor drafting by his lawyer, whose lawyer was representing him at the time, in a letter dated basically the same day. She makes it plain that he did not receive the letter of decision announcing the notice of indefinite suspension. It was certainly not a concession that he received something when she said the same day that he had. Now, the relief you're seeking, you want to go- if you were to prevail, then you would get more than a year's worth of continuous service, so you would have the right to appeal it to the MSPB? Yes. And would you also automatically then be entitled to eight years' worth of back pay? That's some of the relief that we would argue we would be entitled to. They violated the regulations, and, you know, it would be up to an MSPB judge to determine whether or not that's an available remedy. Thank you. Thank you. Mr. Gouger, you are splitting your time with Ms. Kidmiller ten minutes and five minutes, is that correct? That's correct, Your Honor. Okay, we'll try to keep an eye on your time. There's no law that supports this theory of jurisdiction that the petitioner is proposing. What about the Louis case? There is broad language in the Louis case, is there not? There's no jurisdictional issue in the Louis case. It's strictly a timeliness case, and it's clear in the decision itself that nullity refers to the time limits, that if the appeal rights were not given, then that notice of the appeal rights is null. And it's clear from the language of the decision itself in Louis that it's strictly a timeliness case. There's no jurisdictional issue there. Now, just as a general matter, and this may just not be a general matter, but is it fair to say that in the federal system, the termination of employment is effective as of the designated effective date without regard to notice, and that the rights to appeal and other rights may be totaled depending on whether or not you have timely notice? That is correct. This is a suspension case. Well, yeah, termination, suspension. Some kind of adverse actions, let's say, whether it's suspension or termination, I realize. Well, I do want to make the point that this is very different than a termination case, because in a termination case, that notice that the employee is being terminated on the probationary period, that's the only notice they receive. Here, there was a proposal notice. The petitioner admits he received it. He was given an opportunity to respond. The petitioner admits that he did respond to his attorney. And this is an untenured employee who does not have due process rights under Loudermill. So this is a very different situation than a probationary employee who, the last day of his probation, the agency attempts to effect his termination, and he doesn't know about it, and he doesn't receive it until after termination is effective. So those cases are very different than this situation. Well, let's suppose, let's take my case, and let's take it out of the context of a probationary employee. Somebody that's been working for five years, they're terminated, but they don't get the notice of termination. They're terminated effective January 10, 1999, and they don't get the notice of termination for a year. When were they terminated? When did their termination become effective for purposes of asking the question whether they were employed or not? Well, again, in that case, they would have actually had a proposal notice 30 days before. Well, I understand, but I'm trying to get at the question, which seems to me the pertinent question for this case, which is what happens if you have an effective date of January 10th, and I'm the employee. You fail to send me a letter saying you're terminated effective January 10th until the next year. Am I out of a job as of January 10th? Yes. Now, that failure to serve that letter under Louis, that may well mean that you can still appeal and do so timely. I mean, the timeliness will be good cause for this. But your position is that setting aside the preservation of rights such as appeal rights, the agency has legally terminated me as of that date, even though I didn't know it. Yes, and I'll say that since in that case, as compared to this one, in that case, we're speaking of a tenured employee, they have it right under the regulations to receive it prior to the removal. However, the Court of Claims has interpreted that to mean only that there has to be reasonable and diligent efforts to serve. I keep getting a feeling that you're sort of backing and failing a little on this question. Let's assume that he had a right to be informed prior to the effective date. The question is, what's the consequence of the violation of that right? We already know and we agree, I think, one consequence of the violation of right is that his time for appeal doesn't start to run. My question, though, is notwithstanding a violation of his rights to be informed of his status, which is, among other things, the decent thing to do, but assuming there's a violation of that, does his status nonetheless change or is the change in his status told pending the receipt of that notice, which he was entitled to at the outset? No, it's still effective on the date that it's affected by the letter. In fact, just as in this case, his pay would have been cut off. Well, I think the struggle that I'm having with some of this is because, in reality, barring an extreme situation where someone's on non-paid sabbatical or something, the reality is that somebody's going to find out sooner rather than later because they're going to show up at work or they're not going to receive their paycheck in the mail. And so it's a practical matter that's probably not going to happen for an extended period of time. In fact, I'd like to point out here, it's undisputed at all times from the date of his arrest when he was put on emergency placement until he met with the agency officials about being reinstated. All through that period of time, it's undisputed, he knew he was suspended. He knew he wasn't receiving pay. He knew that he wasn't going to work every day and performing his duties. So he knew he was in a non-paid, non-duty status, which in terms of MSPB jurisdiction, that's the definition of a suspension, and that's the action that we're talking about here. So that's just undisputed. And even accepting his assertion that he didn't receive this final letter of decision, he had knowledge that he was suspended. But what about his answer that he could have thought he was on an emergency suspension for eight years, and if so, he had other rights that he wasn't advised of? For purposes of MSPB jurisdiction, there's really no difference between emergency placement or whether you call it indefinite suspension. For purposes of MSPB jurisdiction, the question is, was he on non-paid, non-duty status for disciplinary reasons for more than 14 days? So actually, if he was a tenured employee, on the 15th day of that emergency placement, he would have had the right to appeal to the MSPB. But in fact, he did not, and his only recourse was the postal's internal process, appeals process. So in fact, the real result of not receiving the final decision letter, assuming that's what happened here, is that he could claim procedural error as part of the postal service internal appeals process. But that has nothing to do with MSPB jurisdiction, and that's the issue here. Is there another concurrent case going on here that you referred to in the briefs, his discharge case? Is there another case going on here? There is, yes. After he was reinstated, he was put on administrative leave, and then he was removed. It was four months later. He was removed. An administrative judge has issued a decision upholding that, and it's currently pending before the board on petition for review. So that matter is still pending, his removal. I guess the only other point that I wanted to make was to address this issue, that if you did take this theory to its logical conclusion, this appeal would be moved. In December 2006, he was receiving administrative pay. So if that's the effective date of the suspension, then the suspension is moved, because in order to be suspended, there has to be non-pay status. So that's the only other point I want to make, and also that there's really no due process concerns here. He did receive notice and a right to respond, which he took advantage of, and that's actually more than a non-tenured employee is entitled to. Let's suppose that an employee is, and again, this may be too broad a question for you to have a categorical answer to, but you're familiar with the way these things operate generally, so I'll see if you know. Suppose an employee is on leave without pay status for an extended period of time, for whatever reason, let's say two years on leave without pay. The employee would generally continue, I take it, to be deemed to be in the position for all purposes such as seniority, any continuation of benefits that may be tenure-related, such as pension rights. Would that be true? In other words, would you continue to accumulate years of service under those circumstances? That's true, yes. Okay. All right. Thank you. If there's any other questions, I'll give the remaining time to Mike. Okay. That's good. May it please the Court. I'm certainly happy to answer any questions about any issue that has come up in this appeal. I certainly don't want to repeat anything that the Board has already said, so I will try to limit myself just to two quick points, the first being a brief correction from Appellant's statement about the record. And Appellant represented that while Mr. Mitchell said in his affidavit that he had, in fact, been indefinitely suspended, and that is true, Mr. Mitchell's attorney also sent a letter representing that Mr. Mitchell had, in fact, been suspended as of January 30, 1999. And that letter is at page 52 of the record. So both Mr. Mitchell and his attorney were stating that he had, in fact, been suspended in 1999. Then they had the secondary argument that he had not actually received the letter, which at that time the argument was that that was justification for the untimely filing of the appeal. And so, accordingly, the Board found in its opinion, at page 6 of its opinion, that it was an undisputed fact that Mr. Mitchell was, in fact, suspended effective January 1999. And, of course, at that point he had not had, well, he had less than nine months of current continuous service in his supervisory position. The second additional point I would like to add is that under some of the hypotheticals that have been posed, where an agency does, in fact, make a procedural error in connection with that final decision letter, that kind of procedural error would then be subject to a harmless error analysis. And in some cases the Appellant might, in fact, be able to show a harmful error. In others it will be harmless. But that it is subject to that kind of analysis at all suggests that there is no per se rule that it would automatically invalidate or somehow render null and void the indefinite suspension, as Mr. Mitchell posits on appeal. So I'm certainly... Of course, I guess that depends on where you start. Where you end up depends on where you start, and so often is the case. If, in fact, the rule... Let's suppose we were to read Louis, perhaps a bit expansively, but I think Mr. Plotkin makes a fair point in saying that the language of Louis is broad. If we were to read that to say that you are not suspended until you receive notice, then I guess you wouldn't look at a harmless error at all because there wouldn't be any error, there wouldn't be any suspension. Well, and that would be contrary to... That kind of reading of Louis would be contrary to other cases. Now, I would make first the brief point that Louis... What cases in particular do you think... Well, for example... ...are any clear that Louis doesn't apply that broadly? Well, an example would be this Court's decision in Shiflett, and there we have an error in that final decision letter. It didn't comply with the procedural requirements because it did not inform the Appellant of his appeal rights. And there the remedy, like in Louis, was that good cause had been shown for a late filing of the appeal. In Louis itself, the remedy, if the correct reading is as Mr. Mitchell posits, the remedy would not have been remand to the Board for a decision on the merits. It more likely would have been an automatic... In order for the Board to go ahead and reverse that period of days affected by the notice error and then look at the remainder on the merits. In addition, the particular regulation at issue in Louis, which is 5 CFR 752.402b as in Boyd, was not applicable to Mr. Mitchell. The previous section of the CFR 752.401 makes clear that those particular regulations only apply to Postal Service employees with one year of current continuous service. So he's back in the same, under the same rule that we have this jurisdictional problem with. That that regulation was not applicable to him. Now... Assuming he's wrong on the merits. That argument only works once we've decided that he was suspended as of the date on the letter, right? I suppose, yes. So you're sort of double counting, I think, aren't you? Well, except that Louis very clearly said it was construing that particular regulation in connection with the language of another regulation. And here, arguably, there could possibly be a violation of a Postal Service regulation. But that would be remedied by an internal appeal process. Thank you. Very well. Thank you very much. Good morning, Mr. Plotkin. You have a little bit of time left. The statements in Mr. Mitchell's affidavit that were referred to in Council's letter are, again, poor drafting. On December 6th, Mr. Mitchell has a meeting with his representative. The labor relations person says, You know, you were indefinitely suspended, and you're not entitled to appeal that because it's too late. And it's immediately at that point that he and his representative say, I want to see the file with respect to, you know, when you sent out this alleged letter of decision and what kind of documentation you have to support the fact that you sent it out at the time that the letter is supposed to be dated. And the Postal Service, that has total control over that information, refuses his request. And, in fact, there's nothing else in the record other than that December, that January 29th, 1999 letter that exists that goes anywhere toward showing that the letter was actually issued at the time or mailed. There's no other corroborating evidence anywhere. If it was sent by certified mail, there's been no proof that the letter was mailed at all. So when Mr. Mitchell obtains counsel within a week later, the point that she makes at that time and the point that has been made throughout all this is that there was no indefinite suspension because there was never a letter of decision that we received. And, in fact, I think that 752.404 has a substantive element as well as this procedural element with respect to his appeal rights. The substantive element says, and this deals with the agency decision, it says the agency shall deliver the notice of decision to the employee at or before the time the action will be effective. Then it has its procedural component, and it has the employee of appeal rights, which goes ahead and then sets the standard for how much time the person has to appeal. In the Louie case, someone from the Department of Justice appeared on behalf, and perhaps from the board appeared in oral argument here, was asked a question as to what does deliver to the employee mean? And the response that's quoted in a footnote in the Louie decision is, delivery means receipt by the employee. They could have sent it by messenger to him. They could have called him to come in and handed him a letter of decision. They could have sent it by email. They could have sent it by fax with some kind of confirmation. They could have deputized one of the postal service mail carriers, take it to his house, he's lived there for 30 years, and wait until he arrives and have him sign off on this. And they did none of that. They had an opportunity to deliver the letter of decision to the employee, and they failed to do so. Thank you. Thank you. And the case is submitted. Thank all counsel.